

# Fourth Court of Appeals
## San Antonio, Texas

**MEMORANDUM OPINION**

No. 04-13-00397-CV

**IN THE INTEREST OF J.B.**, D.B., B.B., and J.G.B.

From the 37th Judicial District Court, Bexar County, Texas
Trial Court No. 2012-PA-00294
Honorable Fred Shannon, Judge Presiding[1]

Opinion by:     Karen Angelini, Justice

Sitting:        Karen Angelini, Justice
                Rebeca C. Martinez, Justice
                Patricia O. Alvarez, Justice

Delivered and Filed:  December 18, 2013

AFFIRMED

This is an appeal from an order terminating Jonathan B.'s parental rights to his children,

J.B., D.B., B.B., and J.G.B. Jonathan B. appeals, arguing that the trial court lacked jurisdiction to

render orders in the underlying termination proceeding. We affirm.

**BACKGROUND**

Jonathan B. and his step-daughter, Courtney P., are the parents of J.B., D.B., B.B., and

J.G.B. At the termination hearing, Jonathan B. testified that he and Courtney P. have been in a

relationship since Courtney P. was eighteen years-old. Despite being in a relationship and having

children with Courtney P., Jonathan B. has remained married to Courtney P.'s mother.[2] Jonathan

---

[1] Sitting by assignment
[2] Jonathan B. also had two children with Courtney P.'s mother. He testified he remained married to Courtney P.'s mother because she would "not sign the papers."

B. and Courtney P. have moved from state to state, and have been the subject of two prior CPS proceedings in other states. Jonathan B. testified that these proceedings were the result of his "turning in" Courtney P. for her drug use. He admitted that one of their babies died shortly after being born. And, he admitted that B.B. was born with drugs in her system.

The underlying parental termination proceeding began when Courtney P. gave birth to J.G.B. in San Antonio, Texas, and a referral was made based on neglect. The Department of Family and Protective Services ("the Department") filed a petition seeking the termination of Jonathan B.'s and Courtney P.'s parental rights to J.G.B. The Department later amended its petition to also seek the removal of their three other children: J.B., D.B., and B.B. After a bench trial, the trial court terminated both Jonathan B.'s and Courtney P.'s parental rights. With regard to Jonathan B., the trial court found that he had (1) executed and filed with the court an irrevocable affidavit of relinquishment as to J.G.B.; (2) knowingly placed or knowingly allowed J.B., D.B., and B.B. to remain in conditions or surroundings that endangered the physical or emotional well-being of the children; (3) engaged in conduct or knowingly placed J.B., D.B., and B.B. with persons who engaged in conduct that endangered the physical or emotional well-being of the children; and (4) failed to comply with provisions of a court order that specifically established the actions necessary for him to obtain the return of the children who had been in the permanent or temporary managing conservatorship of the Department for not less than nine months as a result of the children's removal from the parent under chapter 262 for the abuse or neglect of the children. Jonathan B. then filed a notice of appeal.[3]

---

[3] Courtney P. did not file a notice of appeal.

**DISCUSSION**

In his only issue on appeal, Jonathan B. argues the trial court lacked jurisdiction to make *any* orders in this case. He emphasizes that at the onset of the case, the Department filed an affidavit seeking temporary orders relating to the custody of the children. According to Jonathan B., this affidavit acknowledged the existence of a Utah order, which granted custody of the children to him. Jonathan B. acknowledges that the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA"), which has been adopted by Texas, allows Texas to seek emergency jurisdiction over a child even when there is a pre-existing custody order issued by another state. However, Jonathan B. claims that the Department failed to follow the proper procedure to take emergency jurisdiction over the children and thus the trial court lacked jurisdiction to make *any orders* concerning the conservatorship of the children.[4] The Department responds that the record does not support a Utah court having exclusive, continuing jurisdiction pursuant to the UCCJEA, and thus the trial court had jurisdiction to sign the termination order in this case.

As noted, the Department initiated the underlying case when it received a referral of neglect concerning J.G.B., a newborn.[5] The Department's Original Petition for Protection of a Child, for Conservatorship, and for Termination in Suit Affecting the Parent-Child Relationship sought termination of Jonathan B.'s parental rights to J.G.B. Jonathan B. argues that the affidavit attached to the Department's petition "acknowledged the existence of a Utah order granting custody." However, the affidavit's reference to a Utah order is a mere recitation of what Jonathan B. and Courtney P. told the Department's caseworker.

---

[4] Jonathan B. has raised this jurisdictional argument for the first time on appeal.

[5] J.G.B. was born in Texas on January 31, 2012, approximately seven days before the Department initiated the underlying case. There is no allegation that J.G.B. was the subject of any prior child-custody suit. And, during the course of the underlying proceeding, Jonathan B. voluntarily relinquished his parental rights to J.G.B. Jonathan B. does not raise in his brief any appellate arguments that would apply to the trial court's termination of his parental rights to J.G.B. Therefore, any argument regarding the termination of his parental rights to J.G.B. is waived.

Specifically, in the affidavit, the caseworker discussed Jonathan B. and Courtney P.'s practice of moving from state to state to avoid child protective services. The affidavit affirmed the following facts:

- the family has a history with child protective services in several states, including Ohio, Indiana, Iowa, Utah, and Kentucky;

- Courtney P. had a history of using crack cocaine;

- the family home in Ohio had been "shot up as a result of a bad drug deal";

- "[t]he children were present when the shooting occurred";

- when Courtney P. gave birth to her daughter B.B. in a Utah motel room, she tested positive for crack cocaine;

- Courtney P. stated that she has had at least six pregnancies and two of her infants died;

- one infant, W.B.P., was born on August 4, 2010, and died on September 14, 2010;

- "CPS history states that [W.B.P.] was born in Indiana and he was born in a motel";

- "[h]omicide investigators from Findley, Ohio tried to speak to [Courtney P.] but she did not open the door when they came to the motel room";

- "[t]he family left town before anything could be done"; and

- a CPS case had been reported in Texas on July 2, 2011, but was "Unable to be Completed."

Although J.B., D.B., and B.B. were not added to the suit until a subsequent pleading was filed, the affidavit also reported concerns of sexual abuse to J.B., D.B., and B.B. because of the way the children behaved. The affidavit then stated the following:

> [Courtney P.] gave birth to her child [B.B.] in Utah in a motel room and was positive for crack. [B.B.] and siblings, [J.B.] and [D.B.] were all taken by . . . CPS. [Courtney P.] states her rights were terminated to these three children. Information from Utah is still being obtained in regards to that case. [Jonathan B.] denies this and states he was granted sole custody of those children in Utah on July 2, 2009, by Judge Linsley and [Courtney P.] voluntarily gave him custody. [Courtney P.] states her rights were terminated due to cocaine use.

The affidavit then concluded with noting that despite J.B., D.B., and B.B. not being named in the suit, the Department "remains very concerned for the welfare of these children."

Jonathan B. claims that because this affidavit by the caseworker recounted his and Courtney P.'s statements regarding a Utah order, the trial court did not have jurisdiction to sign any orders under the UCCJEA until it contacted a Utah court. We first note that, whether or not a Utah court had entered a prior order regarding J.B., D.B., and B.B. ("the children"), it is undisputed that the children were found in Texas and that the trial court had jurisdiction under emergency provisions of the UCCJEA to render temporary orders. *See* TEX. FAM. CODE ANN. § 152.204(a) (West 2008) ("A court of this state has temporary emergency jurisdiction if the child is present in this state and the child has been abandoned or it is necessary in an emergency to protect the child because the child, or a sibling or parent of the child, is subjected to or threatened with mistreatment or abuse.").

With regard to whether the trial court had jurisdiction to sign an order terminating Jonathan B.'s parental rights, we note that the affidavit attached to the Department's petition merely restates remarks made by Jonathan B. and Courtney P. about some unspecified Utah proceeding. After filing this original petition with the attached affidavit, the Department filed its First Amended Petition for Protection of a Child, for Conservatorship, and for Termination in Suit Affecting the Parent-Child Relationship, adding J.B., D.B., and B.B. as children subject of the suit, and alleging that the trial court had emergency or home state jurisdiction under the UCCJEA. In accordance with section 155.101 of the Texas Family Code, the court then requested from the bureau of vital statistics identification of the court that last had continuing, exclusive jurisdiction of the children in the suit. *See* TEX. FAM. CODE ANN. § 155.101(a) (West 2008) ("The petitioner or the court shall request from the bureau of vital statistics identification of the court that last had continuing, exclusive jurisdiction of the child in a suit . . . ."). The bureau of vital statistics responded that

"according to the Central Record File," the children had "not been subject of a suit affecting the parent-child relationship in which a judgment was entered on or after January 1, 1974." Having been so informed, the trial court had jurisdiction.[6] *See* TEX. FAM. CODE ANN. § 155.103(a) (West 2008) (stating that a "court shall have jurisdiction over a suit if it has been, correctly or incorrectly, informed by the bureau of vital statistics that the child has not been the subject of a suit").[7]

Moreover, the record does not support Jonathan B.'s assertion that pursuant to the UCCJEA, Utah is the "home state," which made the "initial determination" regarding custody of the children. Pursuant to the UCCJEA, a court has jurisdiction to make an initial child custody determination only if:

(1) the state is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state;

(2) a court of another state does not have jurisdiction under Subdivision (1), or a court of the home state of the child has declined to exercise jurisdiction on the ground that this state is the more appropriate forum under section 152.207 or 152.208, and:

    (A) the child and the child's parents, or the child and at least one parent or a person acting as a parent, have a significant connection with this state other than mere physical presence; and

    (B) substantial evidence is available in this state concerning the child's care, protection, training, and personal relationships;

(3) all courts having jurisdiction under Subdivision (1) or (2) have declined to exercise jurisdiction on the ground that a court of this state is the more appropriate forum to determine the custody of the child under Section 152.207 or 152.208; or

---

[6] The trial court's judgment states that after examining the record and hearing the evidence, it found that "a request for identification of a court of continuing, exclusive jurisdiction" had "been made as required by section 155.101" and that it had "jurisdiction of this case and of all the parties and that no other court ha[d] continuing, exclusive jurisdiction of this case."

[7] We note that the record is missing the bureau of vital statistics response with regard to J.B. Section 155.104(b) provides that "[i]f a final order is rendered in the absence of the filing of the information from the bureau of vital statistics, the order is voidable on a showing that a court other than the court that rendered the order had continuing, exclusive jurisdiction." TEX. FAM. CODE ANN. § 155.104(b) (West 2008). For reasons discussed later in this opinion, there has been no showing in this case that a Utah court had continuing, exclusive jurisdiction over J.B.

(4) no court of any other state would have jurisdiction under the criteria specified in Subdivision (1), (2), or (3).

TEX. FAM. CODE ANN. § 152.201(a) (West 2008). Section 152.203 provides that except as otherwise provided in Section 152.204 (which gives a court temporary emergency jurisdiction), a court "may not modify a child custody determination made by a court of another state unless a court of this state has jurisdiction to make an initial determination under Section 152.201(a)(1) or (2)," and

(1) the court of the other state determines it no longer has exclusive continuing jurisdiction under Section 152.202 or determines a court of this state would be a more convenient forum under Section 152.207; or

(2) a court of this state or a court of the other state determines that the child, the child's parents, and any person acting as a parent do not presently reside in the other state.

TEX. FAM. CODE ANN. § 152.203 (West 2008). Further, *a court that has made a child custody determination consistent with Section 152.201 or 152.203 has exclusive continuing jurisdiction over the determination* until (1) it determines that neither the child, nor the child and one parent, nor the child and a person acting as a parent, have a significant connection with the state and that substantial evidence is no longer available in this state concerning the child's care, protection, training, and personal relationships; or (2) a court of this state or a court of another state determines that the child, the child's parents, and any person acting as a parent do not presently reside in this state. TEX. FAM. CODE ANN. § 152.202(a) (West 2008).

Here, the record does not reflect that a Utah court made a child custody determination consistent with Section 152.201 or 152.203, thus giving it exclusive continuing jurisdiction over the determination. We first note that Jonathan B.'s entire jurisdictional argument is premised on the existence of some unspecified order from a Utah court. However, as emphasized by the Department, no order from a Utah court was entered in evidence. Instead Jonathan B. points to his

own testimony for support and argues that "[a]s this case proceeded, the existence of the order was uncontested." He cites to his own testimony that when he and Courtney P. lived in Utah, he "turned her in for using drugs" and that B.B. had been born with drugs in her system. He claimed that after completing family services, a court in Utah "awarded him custody" of the children. He then went to Indiana with the children. This testimony is simply not sufficient for us to conclude that a Utah court rendered an order consistent with Section 152.201 or 152.203 that would give it exclusive continuing jurisdiction over matters involving the children pursuant to the UCCJEA. *See* TEX. FAM. CODE ANN. § 152.202(a) (West 2008).

Additionally, the evidence presented at the hearing does not support Jonathan B.'s assertion that Utah is the children's home state. The UCCJEA defines "home state" as "the state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child custody proceeding." TEX. FAM. CODE ANN. § 152.102(7) (West 2008). It is clear from Jonathan B.'s testimony that the children had not lived with a parent in Utah for at least six consecutive months immediately before the commencement of the underlying proceeding. Further, the evidence supports the trial court's finding that a Texas court had jurisdiction to make an initial child custody determination pursuant to the UCCJEA. *See* TEX. FAM. CODE ANN. § 152.201(a)(2) (West 2008). First, no other court had jurisdiction as the children's home state. *See* TEX. FAM. CODE ANN. § 152.201(a)(2)(A) (West 2008). Jonathan B. testified that he and the children had moved from state to state without any indication of how long they had resided in any particular place. Second, he and the children have a significant connection with Texas other than mere physical presence, and substantial evidence is available in Texas concerning the children's care, protection, training, and personal relationships. *See* TEX. FAM. CODE ANN. § 152.201(a)(2)(B) (West 2008). Jonathan B. testified he and his children came to San Antonio in December 2011 so that his eldest child could enroll in school. After the Spring 2012

semester, his plan was to remain in Texas – he was going to move to Houston where he testified he had a "support system." Therefore, there is evidence supporting the trial court's finding that it had jurisdiction in this case.

Because the trial court had jurisdiction to enter orders in the underlying proceeding, we affirm the trial court's order of termination.


Karen Angelini, Justice